No. 22-51078

# United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff–Appellant,*

*v.*

SAMUEL ADAM SANCHEZ-TENA,

*Defendant–Appellee.*

Appeal from the United States District Court
for the Western District of Texas
No. 7:22-CR-160-DC

## APPELLANT'S REPLY BRIEF FOR THE UNITED STATES

JAIME ESPARZA
United States Attorney

CHARLES E. FOWLER, JR.
Assistant United States Attorney
Western District of Texas
903 San Jacinto, Suite 334
Austin, Texas 78701
Phone: (512) 370-1265
Fax: (512) 916-5854

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ................................................... ii

ARGUMENT .................................................................. 1

    I.    The majority rejecting Second Amendment challenges to § 922(n) keeps growing. ........................................................ 1

    II.   While *Rahimi* still binds as to § 922(g)(8), this Court should not extend it ................................................. 3

    III.  Sanchez cannot escape the standard for facial constitutional challenges ........................................................ 5

    IV.  Sanchez's facial challenge to § 922(n) fails. ............................ 9

        A.    *Bruen* did not overrule cases holding that Bill of Rights guarantees may yield to liberty restrictions tied to the administration of criminal justice. ................. 9

        B.    The Second Amendment's plain text does not cover people under felony indictment. ................................... 11

        C.    Section 922(n) squares with historical tradition. ............ 19

CONCLUSION ............................................................. 26

CERTIFICATE OF SERVICE ............................................... 27

CERTIFICATE OF COMPLIANCE ......................................... 27

# TABLE OF AUTHORITIES

## Cases

*Battles v. United States,*
  No. 4:23-CV-00063-HEA,
  2023 WL 346002 (E.D. Mo. Jan. 20, 2023)......................................16

*Baze v. Rees,*
  553 U.S. 35 (2008)............................................................................21

*Bell v. Wolfish,*
  441 U.S. 520 (1979).........................................................................18

*Bucklew v. Precythe,*
  139 S. Ct. 1112 (2019) ................................................................5, 21

*California Rifle & Pistol Ass'n, Inc. v. City of Glendale,*
  No. 2:22-CV-07346-SB-JC,
  2022 WL 18142541 (C.D. Cal. Dec. 5, 2022)...................................5

*Carlson v. Landon,*
  342 U.S. 524 (1952).........................................................................22

*City of Los Angeles v. Patel,*
  576 U.S. 409 (2015) ...........................................................................8

*Coffin v. United States,*
  156 U.S. 432 (1895).........................................................................19

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ..................................................................passim

*Gerstein v. Pugh,*
  420 U.S. 103 (1975) ......................................................................9, 17

*Johnson v. United States,*
  576 U.S. 591 (2015) ...........................................................................5

*Kaley v. United States,*
  571 U.S. 320 (2014) .............................................................9, 17, 18

*NetChoice, L.L.C. v. Paxton,*
  49 F.4th 439 (5th Cir. 2022) .............................................................5

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  142 S. Ct. 2111 (2022) ...............................................................passim

*Ramos v. Louisiana*,
  140 S. Ct. 1390 (2020) ...................................................................14

*Range v. Attorney General*,
  53 F.4th 262 (3d Cir. 2022), *reh'g en banc granted, opinion
  vacated*, 56 F.4th 992 (3d Cir. 2023), *and on reh'g en banc*,
  69 F.4th 96 (3d Cir. 2023) ........................................................ 14, 15

*Taylor v. Taintor*,
  83 U.S. 366 (1873) ........................................................................21

*Tennessee v. Garner*,
  471 U.S. 1 (1985) ..........................................................................21

*United States v. Adger*,
  No. CR 122-102,
  2023 WL 3229933 (S.D. Ga. May 3, 2023) ................................. 2, 25

*United States v. Bartucci*,
  No. 119CR00244ADABAM,
  2023 WL 2189530 (E.D. Cal. Feb. 23, 2023) ............................. 24, 25

*United States v. Bena*,
  664 F.3d 1180 (8th Cir. 2011) ......................................................... 3

*United States v. Boyd*,
  999 F.3d 171 (3d Cir. 2021) ............................................................ 3

*United States v. Charles*,
  No. MO:22-CR-00154-DC,
  2022 WL 4913900 (W.D. Tex. Oct. 3, 2022) ...................................20

*United States v. D'Luna-Mendez*,
  No. SA-22-CR-00367-OLG,
  2023 WL 4535718 (W.D. Tex. July 13, 2023) .................................12

*United States v. Dahda*,
  No. CR 04-20060-01-DDC,
  2023 WL 4457000 (D. Kan. July 11, 2023) ...................................... 2

*United States v. DaSilva*,
  No. 3:21-CR-267,
  2022 WL 17242870 (M.D. Penn. Nov. 23, 2022) ............................13

*United States v. Evenson*,
  No. CR-23-24-BLG-SPW,
  2023 WL 3947828 (D. Mont. June 12, 2023) ................................... 1

*United States v. Fencl*,
　No. 21-CR-3101 JLS,
　2022 WL 17486363 (S.D. Cal. Dec. 7, 2022) ............................ 16, 20

*United States v. Flores*,
　663 F.3d 1022 (8th Cir. 2011) ........................................................12

*United States v. Gore*,
　No. 2:23-CR-04,
　2023 WL 2141032 (S.D. Ohio Feb. 21, 2023)..................................25

*United States v. Grant*,
　No. CR 3:22-161-MGL-1,
　2022 WL 16541138 (D.S.C. Oct. 28, 2022) ....................................16

*United States v. Holden*,
　70 F.4th 1015 (7th Cir. 2023)................................................... 1, 6, 8

*United States v. Jackson*,
　69 F.4th 495 (8th Cir. 2023) .................................................... 22, 23

*United States v. Jackson*,
　No. CR ELH-22-141,
　2023 WL 2499856 (D. Md. Mar. 13, 2023) .................... 11, 20, 22, 25

*United States v. Jimenez-Shilon*,
　34 F.4th 1042 (11th Cir. 2022).......................................................13

*United States v. Kays*,
　No. CR-22-40-D,
　2022 WL 3718519 (W.D. Okla. Aug. 29, 2022)........................... 3, 25

*United States v. Kelly*,
　No. 3:22-CR-00037,
　2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022)..................10, 21, 24

*United States v. Le*,
　No. 423CR00014SHLHCA,
　2023 WL 3016297 (S.D. Iowa Apr. 11, 2023)................................... 7

*United States v. Libertad*,
　No. 22-CR-644 (JSR),
　2023 WL 4378863 (S.D.N.Y. July 7, 2023)...................................... 7

*United States v. Lopez-Velasquez*,
　526 F.3d 804 (5th Cir. 2008)........................................................... 4

*United States v. Medrano,*
  No. 3:21-CR-39,
  2023 WL 122650 (N.D.W. Va. Jan. 6, 2023) ...................................16

*United States v. Portillo-Munoz,*
  643 F.3d 437 (5th Cir. 2011)...........................................................12

*United States v. Posada,*
  No. EP-22-CR-1944(1)-KC,
  2023 WL 3027877 (W.D. Tex. Apr. 20, 2023) ....................... 2, 20, 21

*United States v. Rahimi,*
  61 F.4th 443 (5th Cir. 2023) ...................................................passim

*United States v. Rodriguez,*
  No. 22-10896,
  2023 WL 4044409 (5th Cir. June 16, 2023)...................................... 2

*United States v. Rowson,*
  No. 22 Cr. 310 (PAE),
  2023 WL 431037 (S.D.N.Y. Jan. 26, 2023).....................................25

*United States v. Salerno,*
  481 U.S. 739 (1987) ............................................................. 5, 9, 11

*United States v. Sanchez,*
  No. W-21-CR-00213-ADA,
  2022 WL 17815116 (W.D. Tex. Dec. 19, 2022) ..............................16

*United States v. Simien,*
  No. SA-22-CR-00379-JKP,
  2023 WL 1980487 (W.D. Tex. Feb. 10, 2023)............................3, 25

*United States v. Sitladeen,*
  64 F.4th 978 (8th Cir. 2023) ..........................................................12

*United States v. Skoien,*
  614 F.3d 638 (7th Cir. 2010)..........................................................23

*United States v. Smith,*
  No. CR 122-081,
  2023 WL 3012007 (S.D. Ga. Mar. 29, 2023) ..................................18

*United States v. Wendt,*
  No. 422CR00199SHLHCA1,
  2023 WL 166461 (S.D. Iowa Jan. 11, 2023) ...................................11

*United States v. Zelaya Hernandez*,
   No. 3:23-CR-0056-B,
   2023 WL 4161203 (N.D. Tex. June 23, 2023) ................................6, 7

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008) .......................................................................... 5

*Worth v. Harrington*,
   No. 21-CV-1348 (KMM/LIB),
   2023 WL 2745673 (D. Minn. Mar. 31, 2023) ...................................14

## Statutes

2 Laws of the State of New York Passed at the Sessions of
   the Legislature (1785–1788) (1886) .................................................22

18 U.S.C. § 922(n).........................................................................passim

18 U.S.C. § 922(o).......................................................................... 8

18 U.S.C. § 922(g)(8).........................................................3, 4, 7, 25

18 U.S.C. § 3142(c)(1)(B)(viii)...........................................................11

An Act for the Punishment of Certain Crimes Against the
   United States, Pub. L. No. 1-9, § 14, 1 Stat. 112 (1790) ...................22

Acts and Laws of His Majesty's Province of New
   Hampshire in New England (1759)..................................................24

Acts and Laws of The English Colony of Rhode Island and
   Providence-Plantations in New-England in America
   (1767).............................................................................................22

Mass. Rev. Stat. ch. 134, § 16 (1836) ...................................................24

## Other Authorities

4 William Blackstone, Commentaries on the Laws of
   England (1769) ..............................................................................24

William Rawle, A View of the Constitution of the United
   States of America (2d ed. 1829) ......................................................24

United States Courts, *Caseload Statistics Data Tables, Table D-4—U.S. District Courts–Criminal Judicial Business* (September 30, 2022), https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables ........................................................................18

# Argument

Under *New York State Rifle & Pistol Association, Inc. v. Bruen*, a court considering a Second Amendment challenge must ask whether the amendment's "plain text covers an individual's conduct" and, if so, whether the challenged law "is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. 2111, 2129–30 (2022). The Court insisted, as it did in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that this standard does not bar legislatures from regulating guns. Yet Sanchez would do just that, making *Bruen*'s first, textual inquiry meaningless and its second, historical inquiry nearly impossible to satisfy. His approach defies precedent and common sense. This Court should join the growing majority holding that 18 U.S.C. § 922(n) does not violate the Second Amendment.

## I.    The majority rejecting Second Amendment challenges to § 922(n) keeps growing.

Most courts continue to disagree with the decision below. (Gov. Br. 8–9.) Since the government filed its brief, one court of appeals has weighed in—albeit in dicta—observing that "neither the Supreme Court nor any court of appeals has deemed § 922(n) void" and doubting "that § 922(n) would be held invalid across the board." *United States v. Holden*, 70 F.4th 1015, 1017 (7th Cir. 2023). At least two more district-court cases have also lined up against the district court's decision here. *See United States v. Evenson*, No. CR-23-24-BLG-SPW, 2023 WL 3947828, at *1 (D. Mont.

June 12, 2023) (reaffirming the "conclusion that § 922(n)'s prohibition on persons under indictment from acquiring firearms is underpinned by the same considerations as felons in possession: each stand for the principle that unvirtuous persons may be disarmed (in this case, temporarily) while the case is pending" (cleaned up)); *United States v. Adger*, No. CR 122-102, 2023 WL 3229933, at *1 (S.D. Ga. May 3, 2023) (upholding § 922(n) based on historical surety laws and laws disarming classes of people "perceived as elevated risks of dangerousness or criminality"), *report and recommendation adopted*, 2023 WL 3627840 (S.D. Ga. May 24, 2023); *see also United States v. Dahda*, No. CR 04-20060-01-DDC, 2023 WL 4457000, at *6 (D. Kan. July 11, 2023) ("[T]he weight of authority suggests that Mr. Dahda's constitutional challenges to his convictions under Sections 922(a) and 922(n) lack substantive merit."). This Court has rejected another plain-error challenge to § 922(n). *United States v. Rodriguez*, No. 22-10896, 2023 WL 4044409, at *1 (5th Cir. June 16, 2023).

Given this growing majority, the few contrary decisions are "mere outliers" indeed. (Def. Br. 5 n.1.) Sanchez cites just three cases from just two (not "[a]t least five") districts, the Western District of Texas and the Western District of Oklahoma. One of those cases (*Quiroz*) was decided by the same district judge as decided Sanchez's case; the judge adopted his *Quiroz* order here. (Gov. Br. 4–7.) Other judges in both of those districts, however, have rejected these judges' analyses and upheld § 922(n). *See United States v. Posada*, No. EP-22-CR-1944(1)-KC, 2023 WL 3027877, at

*3–6 (W.D. Tex. Apr. 20, 2023); *United States v. Simien*, No. SA-22-CR-00379-JKP, 2023 WL 1980487, at *7 (W.D. Tex. Feb. 10, 2023); *United States v. Kays*, No. CR-22-40-D, 2022 WL 3718519, at *5 (W.D. Okla. Aug. 29, 2022). Nowhere in the country have judges uniformly agreed that § 922(n) violates the Second Amendment.[1]

## II.    While *Rahimi* still binds as to § 922(g)(8), this Court should not extend it.

Sanchez relies on *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (June 30, 2023). (Def. Br. passim.) *Rahimi* held that § 922(g)(8), which bars firearm possession by people subject to civil domestic-violence orders, facially violates the Second Amendment. *Id.* at 460–61. No other court of appeals has held that any application of § 922(g)(8) violates the Second Amendment, either before or since *Bruen*. Before *Bruen*, two courts of appeals rejected Second Amendment challenges to § 922(g)(8) based on textual and historical analyses consistent with *Bruen*. *See United States v. Boyd*, 999 F.3d 171, 186 (3d Cir. 2021); *United States v. Bena*, 664 F.3d 1180, 1183–84 (8th Cir. 2011). The government maintains that *Rahimi*'s application of the Second Amendment to § 922(g)(8) is flawed. (Gov. Br. 23.) *See also* Petition for

---

[1] Sanchez counts two unreported decisions among the "five courts" to strike down § 922(n). (Def. Br. 5 n.1 (citing *United States v. McDaniel*, No. 22-cr-176, ECF No. 53 (E.D. Wis. May 3, 2023); *United States v. Reaves*, No. 4:22-cr-224, ECF No. 55 (E.D. Mo. Jan. 9, 2023)).) But both are magistrate judge recommendations—and neither has been adopted by the district court. In *Reaves*, the district court vacated the cited recommendation, and the defendant was convicted. *See* No. 4:22-cr-224, ECF Nos. 60, 62.

Writ of Certiorari at 7–13, *United States v. Rahimi*, No. 22-915, 2023 WL 2600091 (U.S. Mar. 17, 2023).

This Court should not extend *Rahimi* to § 922(n). For one thing, the Supreme Court recently granted certiorari in *Rahimi*. *United States v. Rahimi*, No. 22-915, 2023 WL 4278450, at *1 (U.S. June 30, 2023). *Rahimi* no doubt still binds this Court as to § 922(g)(8) since this Court "remain[s] bound to follow [its] precedent even when the Supreme Court grants certiorari on an issue." *United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008). But the certiorari grant may recommend special caution here since the Supreme Court did not merely agree to review the same "issue" but the *very same case* as Sanchez now seeks to extend—the *only* precedential case striking down § 922(g)(8). Regardless, much of *Rahimi*'s analysis is inapplicable on its own terms to a person, like Sanchez, subject to the criminal-justice process. *See Rahimi*, 61 F.4th at 455 & n.7 (emphasizing "[t]he distinction between a criminal and civil proceeding"); *id.* at 464 (Ho., J., concurring) (explaining that "the government can detain and disarm" criminals "not just after conviction, but also before trial"). The panel explicitly declined "to cast doubt on firearm restrictions," including § 922(n), "that attach during criminal proceedings prior to conviction." *Id.* at 452 n.6. Sanchez's heavy reliance on *Rahimi* is therefore misplaced.

4

### III. Sanchez cannot escape the standard for facial constitutional challenges.

A party bringing a facial challenge must show "'that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (brackets omitted); *see also Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019) ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications."). Contrary to Sanchez's argument, the Supreme Court has "strictly adhered to" *Salerno*'s standard for facial challenges. (Def. Br. 62 n.21.) While Sanchez points to the overbreadth doctrine, this "second type" of facial challenge "is limited to the First Amendment context." *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 450 (5th Cir. 2022) (quotation marks omitted). Sanchez makes no argument for extending this First Amendment doctrine to the Second Amendment context, and no court has accepted such an argument. *See California Rifle & Pistol Ass'n, Inc. v. City of Glendale*, No. 2:22-CV-07346-SB-JC, 2022 WL 18142541, at *7 (C.D. Cal. Dec. 5, 2022) (declining post-*Bruen* "to disregard *Salerno* and *Washington* and extend the overbreadth doctrine into the Second Amendment context").[2]

---

[2] *Johnson v. United States*, 576 U.S. 591, 602 (2015), did not address a facial challenge like Sanchez's but answered the separate question whether "a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." (Def. Br. 62 n.21.)

Thus, courts have explained that to defeat a facial Second Amendment challenge, the government need only identify *some* conduct to which the challenged law could permissibly apply. Addressing § 922(n)—the statute at issue here—the Seventh Circuit recently explained that "except with respect to a law invalid in every possible application (or substantially overbroad with respect to speech), a statute's constitutionality must be assessed as applied." *Holden*, 70 F.4th at 1017. The court pointed (as the government did in its opening brief here) to some applications of § 922(n) that would violate no Second Amendment rights. *Id.* "Even if some applications of § 922(n) would flunk the constitutional standard (say, someone under indictment for an antitrust offense)," the court continued, "others might illustrate the sort of person who cannot be trusted with guns (say, someone under indictment for using violence against a domestic partner)." *Id.* at 1018.

Many district courts in this circuit and elsewhere have likewise stuck to *Salerno* since *Bruen*, rejecting facial challenges when the Second Amendment would allow at least some applications of the challenged law. One relied on *Salerno* to reject a facial challenge to § 922(g)(1), the prohibition on gun possession by convicted felons. *United States v. Zelaya Hernandez*, No. 3:23-CR-0056-B, 2023 WL 4161203, at *7 (N.D. Tex. June 23, 2023). That court explained that many applications of § 922(g)(1) would square with "the historical understanding that dangerous persons or threats to public safety could be stripped of their Second Amendment right." *Id.* It

6

recognized that "the [felon] classification—like all classifications—may be overinclusive or underinclusive at the margins," and so may give rise to as-applied challenges. *Id.* "But facially, … the law [is] historically consistent with the 'right' enshrined by the Second Amendment." *Id.*; *see also United States v. Libertad*, No. 22-CR-644 (JSR), 2023 WL 4378863, at *5 (S.D.N.Y. July 7, 2023) (rejecting a facial challenge to § 922(g)(3) because "[t]he mere speculation that some [unconstitutional applications] might exist is insufficient"); *United States v. Le*, No. 423CR00014SHLHCA, 2023 WL 3016297, at *4 (S.D. Iowa Apr. 11, 2023) (holding that *Bruen* did not "purport to repudiate the *Salerno* standard for facial constitutional challenges").

*Rahimi* did not "reject[]" applying *Salerno*'s standard to facial Second Amendment challenges. (Def. Br. 61.) In *Rahimi*, this Court described the parties' dispute over the applicable standard, reciting the government's position that *Salerno* applied and the defendant's position (repeated by Sanchez here) that "*Salerno* has fallen out of favor." 61 F.4th at 453. This Court did not explicitly resolve that dispute but ultimately concluded— echoing and citing *Salerno*—that § 922(g)(8) is unconstitutional "under any circumstances." *Id.* So, if anything, the Court endorsed rather than "foreclosed" (Def. Br. 61) applying *Salerno*.

Sanchez does not contend that all possible applications of § 922(n) violate the Second Amendment. The government identified *conduct* subject to § 922(n) that the Second Amendment would plainly not protect.

7

(Gov. Br. 50.)[3] Sanchez does not dispute that these examples would be unprotected but claims that it does not matter because criminal prohibitions *other than* § 922(n) would cover them. (Def. Br. 62–63.) But the same conduct can be prohibited by multiple criminal laws; that does not render any of those laws irrelevant or inapplicable. Prosecution under any of them may, for instance, affect the available penalties. In contrast, *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), addressed a facial Fourth Amendment challenge to a state law authorizing warrantless searches. (Def. Br. 62–63.) The state claimed that the law could be constitutionally applied when the police had a warrant or an exception to the warrant requirement applied. *Id.* at 417–18. The Court held that those applications were irrelevant because those searches would be permissible regardless, and so applying the law to them lacked *any* additive legal effect. *Id.* at 418–19.[4]

---

[3] The Seventh Circuit similarly identified *people* subject to § 922(n) whom the Second Amendment would plainly not protect—"dangerous people who are apt to misuse [firearms]." *Holden*, 70 F.4th at 1017.

[4] Sanchez is also wrong that the government's conduct examples would invariably be prohibited by criminal laws other than § 922(n). For instance, Sanchez cites no law prohibiting receipt of *all* dangerous and unusual weapons—weapons not "in common use at the time." *See Bruen*, 142 S. Ct. at 2128. The government regulates specific dangerous and unusual weapons, *see, e.g.*, 18 U.S.C. § 922(o), but leaves citizens free to receive other uncommon weapons (if no other prohibition applies) even though the Second Amendment would allow the government to restrict them.

**IV. Sanchez's facial challenge to § 922(n) fails.**

    **A.** *Bruen* **did not overrule cases holding that Bill of Rights guarantees may yield to liberty restrictions tied to the administration of criminal justice.**

The Supreme Court has held that "competent adults may face substantial liberty restrictions as a result of the operation of our criminal justice system." *Salerno*, 481 U.S. at 748–49 (citing *Gerstein v. Pugh*, 420 U.S. 103, 114, 117 n.19 (1975)). And it has described ways in which a criminal indictment may "serve the purpose of immediately depriving the accused of her freedom." *Kaley v. United States*, 571 U.S. 320, 329 (2014). The government cited cases applying this principle to uphold pretrial liberty restrictions against challenges under the First, Fourth, Fifth, Sixth, and Eighth Amendments. (Gov. Br. 12–14.)

Sanchez insists that those cases do not apply here because the challengers asserted constitutional liberties other than the right to bear arms. (Def. Br. 8–9.) He claims, in essence, that gun rights are just different, so that the unique governmental interest in administering criminal justice—which the Supreme Court gave special constitutional status in *Salerno*, *Kaley*, and other cases—is insufficient to restrict an indicted criminal defendant's gun access. Sanchez thus urges the illogical proposition that the founders preserved unyielding guns rights for the criminally accused even when almost every other guarantee in the Bill of Rights yields to the demands of the criminal-justice process.

*Bruen* purports to accomplish exactly the opposite by putting the Second Amendment on the *same* footing as those other guarantees. *Bruen* held that the "Second Amendment standard accords with how [the Court] protect[s] other constitutional rights," 142 S. Ct. at 2130, and that the right to bear arms is subject to the same "body of rules [as] the other Bill of Rights guarantees," *id.* at 2156. The doctrine described in *Salerno* as allowing the government to restrict a criminal defendant's liberty when necessary to promote the administration of criminal justice is one of those "rules." Even if that rule may sometimes require weighing the government's interest against an indicted defendant's gun rights (Def. Br. 9), *Bruen* does not foreclose that weighing because it did not consider a restriction implicating the administration of criminal justice. Anyway, this case requires no weighing since—apart from claiming that *Salerno* is inapplicable—Sanchez does not dispute that valid criminal-justice interests outweighed his liberty interest in buying a gun during the pendency "of an active felony prosecution." *See United States v. Kelly*, No. 3:22-CR-00037, 2022 WL 17336578, at *6 (M.D. Tenn. Nov. 16, 2022).

True, not every court has agreed with this reasoning. (Def. Br. 9.) But some have based their decisions at least partly on the government's unique interest in "maintaining the integrity and functioning of" criminal prosecutions. *Id. Kelly* "note[d] that the restrictions found in 18 U.S.C. § 922(n) are specifically tied to the administration of justice, an area in which individuals 'may face substantial liberty restrictions,' at least for limited

periods of time." *Id.* (quoting *Salerno*, 481 U.S. at 749). And it explained that *Bruen* cast no doubt on "[t]he broader caselaw … recogniz[ing] a constitutionally meaningful government interest in safeguarding [criminal] proceedings that is sufficient to justify at least some temporary curtailments of even the most important individual rights." *Id.*; *see also United States v. Jackson*, No. CR ELH-22-141, 2023 WL 2499856, at *14 (D. Md. Mar. 13, 2023) (reasoning similarly in another case upholding § 922(n)); *United States v. Wendt*, No. 422CR00199SHLHCA1, 2023 WL 166461, at *5 (S.D. Iowa Jan. 11, 2023) (same in a decision upholding the pretrial gun restriction in § 3142(c)(1)(B)(viii)).

## B.  The Second Amendment's plain text does not cover people under felony indictment.

**1.** Sanchez is wrong that a person's "status" is "irrelevant" to *Bruen*'s first, textual step. (*E.g.*, Def. Br. 11.) *Bruen* asks whether "the Second Amendment's plain text covers an individual's conduct." 142 S. Ct. at 2129–30. But that test comfortably accommodates status-based exclusions: if a person enjoys no Second Amendment protection, then the amendment covers none of his conduct. Had the Court meant to adopt Sanchez's rigid conduct-only approach, then it could have said so. The Court instead noted at the start of its textual analysis that the petitioners were *undisputedly* covered individuals and then focused on their "proposed course of conduct" because the restriction at issue was conduct-based. *Bruen*, 142 S. Ct. at 2134. "*Bruen* does not command [courts] to consider

11

only 'conduct' in isolation" or "disavow" considering whether a person falls outside the amendment's scope before deciding whether history would support disarming him. *United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023).

It is impossible to square Sanchez's conduct-only approach with the widespread recognition that at least *some* people subjected to the nation's gun laws are outside the Second Amendment's scope. Take illegal aliens. The Eighth Circuit held that *Bruen* did not overrule its precedent "holding that 'the protections of the Second Amendment do not extend to aliens illegally present in this country.'" *Id*. at 983 (quoting *United States v. Flores*, 663 F.3d 1022, 1023 (8th Cir. 2011)). *Flores*, in turn, relied on this Court's precedent holding that the Second Amendment does not cover illegal aliens. *See* 663 F.3d at 1023 (citing *United States v. Portillo-Munoz*, 643 F.3d 437, 440–41 (5th Cir. 2011)). Courts in this circuit have indicated that, like *Flores*, *Portillo-Munoz* survives *Bruen*. *See, e.g.*, *United States v. D'Luna-Men-dez*, No. SA-22-CR-00367-OLG, 2023 WL 4535718, at *4 (W.D. Tex. July 13, 2023). This recognition that illegal aliens are excluded from the Second Amendment's scope shows that courts cannot simply skip the question of status at *Bruen*'s first step.

By focusing on the words "the people" in the Second Amendment (Def. Br. 11–19), Sanchez misreads the government's argument. Sanchez argues that, in *Heller*, the Supreme Court said that each time the Constitution uses "the people," "the term unambiguously refers to all members of

12

the political community, not an unspecified subset." 554 U.S. at 580. But the government's textual argument does not rest on excluding indicted defendants from "the people." It rests instead on the scope of the "pre-existing right" codified by the Second Amendment's text. *See id.* at 592. (Gov. Br. 16–24.) "[T]he history of the 'pre-existing right' of 'the people' to 'keep and bear arms,' codified in the Second Amendment, demonstrates that the Second Amendment right extended, and continues to extend, 'to some categories of individuals, but not others.'" *United States v. DaSilva*, No. 3:21-CR-267, 2022 WL 17242870, at *7 (M.D. Penn. Nov. 23, 2022) (quoting *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1044 (11th Cir. 2022)). So "even individuals who are indisputably part of 'the people' … might not partake of that pre-existing right and, therefore, may be prohibited from possessing firearms without offending the Second Amendment." *Id.* Sanchez ignores that the Second Amendment's text applies no more broadly than did the preexisting right it codified, so that it excludes groups that did not enjoy the preexisting right.[5]

This reasoning does not improperly "conflate" *Bruen*'s textual and historical inquiries. (Def. Br. 16–17, 19 nn.7–8.) *Bruen* never said that history matters *only* to its second, historical-tradition inquiry. "Although the first step of the Supreme Court's test refers to the amendment's 'plain text'

---

[5] Since the proper understanding of the Second Amendment's text excludes some groups even if they are part of "the people," recognizing those exclusions does not threaten the "basic protections" of other constitutional provisions that refer to "the people." (Def. Br. 13.)

and the second step to 'historical tradition,' both steps of the analysis are historical in focus." *Worth v. Harrington*, No. 21-CV-1348 (KMM/LIB), 2023 WL 2745673, at *4 (D. Minn. Mar. 31, 2023). Thus, to determine whether the Second Amendment's textual scope covers a person's conduct, a court must ascertain the text's "original public meaning," *see Ramos v. Louisiana*, 140 S. Ct. 1390, 1396 (2020), since "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them," *see Bruen*, 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634–635). *Bruen* commanded "reliance on history to inform the meaning of constitutional text—especially text meant to codify a *pre-existing* right." 142 S. Ct. at 2130.

This Court agreed in *Rahimi* that at least some statuses "remove" a person "from the political community within the amendment's scope," 61 F.4th at 452, though Sanchez now calls that agreement "somewhat confusing dicta" (Def. Br. 16). Clearing up any confusion, *Rahimi* relied on the now-vacated panel opinion in *Range v. Attorney General*, 53 F.4th 262, 273 (3d Cir. 2022), *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023), *and on reh'g en banc*, 69 F.4th 96 (3d Cir. 2023). The *Range* panel opinion held that the Second Amendment covers only "the law-abiding, responsible citizens of the polity, a category that properly excludes those who have demonstrated disregard for the rule of law through the commission of felony and felony-equivalent offenses." *Id.* at 266 (cleaned up); *see also id.* at 284 n.32 (disagreeing with cases insisting on a conduct-only

approach). That the en banc Third Circuit disagreed with the panel (Def. Br. 18–19) neither strips the panel's reasoning of persuasive value nor undoes *Rahimi*'s reliance on it. The en banc Third Circuit was itself divided, with two judges maintaining that "the Majority incorrectly discounts the importance of the Supreme Court's emphasis on law-abidingness as a limitation on the Second Amendment right." *Range*, 69 F.4th at 114 (Shwartz, J., dissenting).

**2.** A felony indictment—reflecting a grand jury's probable-cause finding—is sufficient to exclude a person from the Second Amendment's textual scope. To start, the Supreme Court limited the Second Amendment's scope to law-abiding citizens. *Heller*, for instance, explained that it was unsurprising that the Court had not previously resolved whether the Second Amendment codified an individual or collective right because, for most of the nation's history, the Bill of Rights did not apply to the states, and "the Federal Government did not significantly regulate the possession of firearms *by law-abiding citizens*." 554 U.S. at 625 (emphasis added). That observation mattered because, the Court implied, it would be called on to construe the Second Amendment only if governments *did* regulate law-abiding citizens. *Bruen* put even more emphasis on law-abiding citizens as the holders of the Second Amendment right. *See* 142 S. Ct. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156. Many courts have thus taken the

Supreme Court at its word that the Second Amendment covers only law-abiding citizens.[6]

Sanchez implies that only a criminal *conviction* could exclude someone from the Second Amendment's scope. (Def. Br. 20–24.) Had the Supreme Court meant to exclude only convicted felons, however, it could have said so. Instead, the Court repeatedly deployed "its chosen 'law-abiding' language" in both *Heller* and *Bruen. See Medrano*, 2023 WL 122650, at *1. The Court's language naturally excludes more than just convicted felons since a person can commit serious crimes—and thus be undeniably non-law-abiding—without sustaining a conviction. *Heller*, moreover, identified "felons and the mentally ill" as merely items on a *non*-exhaustive list

---

[6] *See, e.g., Battles v. United States*, No. 4:23-CV-00063-HEA, 2023 WL 346002, at *1 (E.D. Mo. Jan. 20, 2023) ("*Bruen* confines its holding to the context of regulations that 'burden a *law-abiding citizen's* right to armed self defense."); *United States v. Medrano*, No. 3:21-CR-39, 2023 WL 122650, at *1–2 (N.D.W. Va. Jan. 6, 2023) (noting that *Bruen*'s "rationale is firmly built upon its chosen 'law-abiding' language, which appears throughout," and holding that "the reach of *Bruen* ends at the feet of those individuals who are not law-abiding citizens"); *United States v. Sanchez*, No. W-21-CR-00213-ADA, 2022 WL 17815116, at *1 (W.D. Tex. Dec. 19, 2022) ("The Supreme Court has held that the right to bear arms is limited to 'law-abiding, responsible citizens.'"); *United States v. Fencl*, No. 21-CR-3101 JLS, 2022 WL 17486363, at *2 (S.D. Cal. Dec. 7, 2022) (holding that an indicted defendant on pretrial release fell "outside the scope of [the Second Amendment's] protections as he has been charged with unlawful possession of firearms based on a finding of probable cause"); *United States v. Grant*, No. CR 3:22-161-MGL-1, 2022 WL 16541138, at *3 (D.S.C. Oct. 28, 2022) ("By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in *Heller* and *McDonald* clarifies the bounds of the plain text of the Second Amendment.").

of exclusions, *see* 554 U.S. at 626–27 & n.26, implying the existence of others.

Because a person can be non-law-abiding without a conviction, a felony indictment must suffice to exclude a person from the Second Amendment's scope. (Gov. Br. 24–27.) An indictment "'conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged." *Kaley*, 571 U.S. at 328 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)). Probable cause, in turn, requires "the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* at 338 (cleaned up). An indictment requires an evidentiary—if not adversarial—proceeding before a grand jury. *See id.* So, for purposes of assessing whether someone abides by the law, the differences between indictment and conviction are matters of degree—indictment requires less procedural formality and a lesser standard of proof than conviction, *see Gerstein*, 420 U.S. at 120–21 (comparing the two determinations), but still reflects a considered, neutral judgment that the defendant probably broke the law.

The Supreme Court has never suggested that a grand jury's probable-cause determination is insufficient to show that a person falls outside the law-abiding citizens entitled to bear arms. To the contrary, it has confirmed that the probable-cause finding "may do more than commence a criminal proceeding (with all the economic, reputational, and personal harm that entails); the determination may also serve the purpose of

immediately depriving the accused of her freedom." *Kaley*, 571 U.S. at 328. Sanchez misses the point in arguing that an indictment does not "extinguish[]" the indicted defendant's other constitutional rights but only allows the government to restrict them. (Def. Br. 22–23.) Those other rights have not been *explicitly limited in scope* to law-abiding citizens by the Supreme Court; the Second Amendment right has. Thus, "[t]he grand jury that is good enough—reliable enough, protective enough—to inflict those other grave consequences through its probable cause findings," *see Kaley*, 571 U.S. at 330, must also be good enough to establish that an indicted defendant is not law-abiding under the Second Amendment.[7]

Sanchez cites the presumption of innocence to argue that indicted defendants are law-abiding. (Def. Br. 20–21.) But, to repeat (Gov. Br. 15), that presumption only allocates the burden of proof at trial; it does not preserve a defendant's liberties before trial. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979); *see United States v. Smith*, No. CR 122-081, 2023 WL 3012007, at *5 (S.D. Ga. Mar. 29, 2023) (rejecting the defendant's reliance on the presumption of innocence in challenging § 922(n) because it "is a narrow

---

[7] Practically speaking, almost all indicted defendants are convicted. For instance, during the 12-month period ending September 30, 2022, more than 91 percent of federal criminal dispositions resulted in conviction and sentencing. *See* United States Courts, *Caseload Statistics Data Tables, Table D-4—U.S. District Courts–Criminal Judicial Business* (September 30, 2022), https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables. The slim chance that an indicted defendant will not be convicted weighs against assigning constitutional significance to the distinction between indictment and conviction in determining who qualifies as non-law-abiding.

doctrine that only applies at the criminal trial itself to further define the government's burden of proof"), *report and recommendation adopted*, 2023 WL 3010178 (S.D. Ga. Apr. 19, 2023). Sanchez fails to explain how treating him as non-law-abiding for Second Amendment purposes would "subvert[]" (Def. Br. 21 n.9) his right to be proven guilty beyond a reasonable doubt at trial before facing criminal punishment.[8]

### C.  Section 922(n) squares with historical tradition.

**1.** Sanchez misstates *Bruen*'s historical standard. For instance, *Bruen* did not adopt a requirement that the government "show a governmental practice that has been open, widespread, and unchallenged since the early days of the Republic." (Def. Br. 27 (quotation marks omitted).) In the context of noting the limits on the relevance of post-enactment history, the Court observed that such a practice would be *relevant* to its "interpretation of an ambiguous constitutional provision." *Bruen*, 142 S. Ct. 2137. But it did not suggest that such a practice was necessary to upholding a modern law. Sanchez also takes *Bruen*'s "broadly prohibiting" language out of context (Def. Br. 26); the Court was not stating the rule of decision but describing the challenged licensing law.

---

[8] Sanchez ignores *Bell* and cites *Coffin v. United States*, 156 U.S. 432 (1895). (Def. Br. 20.) *Coffin* does not support Sanchez's argument. *Coffin* considered the presumption of innocence in the context of deciding whether a jury charge properly described the applicable burdens and presumptions. *See* 156 U.S. at 456–61. It did not suggest that the presumption of innocence protects indicted defendants from being deemed non-law-abiding for purposes other than trial.

19

**2.** Sanchez cannot overcome the historical record supporting § 922(n) by citing laws addressing militia service just because those laws did not *explicitly exempt* indicted defendants. (Def. Br. 29–31.) The cited laws do not address indicted defendants at all. And there may have been little need to explicitly exempt them since, as set forth below, many were detained pending trial. *See infra*, Part IV.C.3.a. Sanchez cites no authority holding that militia laws "required [indicted defendants] to own firearms." (Def. Br. 31.)

**3.** The government identified several historical analogues to § 922(n). (Gov. Br. 30–48.) Contrary to *Bruen*, Sanchez's response (Def. Br. 25–61) effectively demands a "dead ringer" or "historical twin," *see* 142 S. Ct. at 2133, a standard under which "there are likely very few (if any) modern firearm regulations that would survive," *cf. United States v. Charles*, No. MO:22-CR-00154-DC, 2022 WL 4913900, at *8 (W.D. Tex. Oct. 3, 2022) (so observing in the felon-in-possession context).

**3.a.** Sanchez's discussion of laws allowing pretrial detention suffers from three main flaws. First, Sanchez incorrectly denies that pretrial detention is a gun restriction. (Def. Br. 32, 39–40.) "[T]he temporary abridgement of … the right to bear arms" is "[i]nherent in" pretrial detention. *Fencl*, 2022 WL 17486363, at *3; *see also Jackson*, 2023 WL 2499856, at *16 (noting that pretrial detention "obviously strips a defendant of all Second Amendment rights"). Indeed, "historical detention laws were far more burdensome than § 922(n) is." *Posada*, 2023 WL 3027877, at *5. *Bruen*

never suggested that modern gun restrictions cannot be supported by analogy to historical laws incidentally restricting gun rights. Nor did *Bruen* foreclose "common sense reasoning—that, for example, heavy restrictions are typically more problematic than light ones." *Id.* (quoting *Kelly*, 2022 WL 17336578, at *6).[9]

Second, Sanchez understates the prevalence of capital punishment—and thus pretrial detention—in the founding era. (Def. Br. 33–39.) Capital punishment for felonies was "ubiquit[ous]" and was "'the standard penalty for all serious crimes.'" *Baze v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J., concurring in the judgment) (quoting Stuart Banner, The Death Penalty: An American History 23 (2002)); *see also Bucklew*, 139 S. Ct. at 1122 (same); *Tennessee v. Garner*, 471 U.S. 1, 13 (1985) (explaining that, at common law, "virtually all felonies were punishable by death"). In addition to the federal crimes that the First Congress made punishable by death, *see* An Act for the Punishment of Certain Crimes Against the United States, Pub. L. No. 1-9, § 14, 1 Stat. 112, 115 (1790), many colonial and state legislatures through the end of the 1700s authorized capital punishment, even for nonviolent crimes. In 1788, just three years before the Second Amendment's ratification, New York passed a law imposing the death

---

[9] Sanchez's argument about pretrial surety practices (Def. Br. 42–48) is similarly flawed. Given that many indicted defendants, even if released, were subject to a surety's unrestricted authority and could be arrested and taken to jail in the surety's discretion, *see, e.g., Taylor v. Taintor*, 83 U.S. 366, 371–72 (1873), the surety practice provides historical support for § 922(n)'s less burdensome pretrial liberty restriction.

penalty for crimes such as burglary, robbery, arson, malicious maiming and wounding, and counterfeiting. 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785–1788) at 664–65 (1886). Similarly, a 1743 Rhode Island law provided that any person convicted of forging or counterfeiting bills of credit "be adjudged guilty of Felony" and "suffer the Pains of Death." Acts and Laws of The English Colony of Rhode Island and Providence-Plantations in New-England in America 33–34 (1767); *see also United States v. Jackson*, 69 F.4th 495, 503 (8th Cir. 2023) (explaining that early legislatures "authorized punishments that subsumed disarmament—death or forfeiture of a perpetrator's entire estate—for non-violent offenses involving deceit and wrongful taking of property").

Third, historical pretrial detention laws would support § 922(n) even if Sanchez were right that only *some* people accused of serious crimes were detained in the founding era. Historical precursors need not have defined the restricted group identically to § 922(n) because *Bruen* does not demand a "historical twin." 142 S. Ct. at 2133. More fundamentally, Sanchez does not dispute that defendants indicted for serious crimes have always lacked a constitutional right to be released. *See Carlson v. Landon*, 342 U.S. 524, 546 (1952). And since pretrial detention necessarily suspends a defendant's Second Amendment rights, *Jackson*, 2023 WL 2499856, at *16, the legislative *power* to authorize detention (whether or not exercised in a given jurisdiction as to a given kind of defendant) necessarily implies the power

22

to suspend indicted defendants' gun access. Indeed, to the extent jurisdictions varied as to which defendants they detained, the variations only underscore the legislative role in regulating their gun access.

**3.b.** On the tradition of categorically disarming dangerous or untrustworthy people, Sanchez misses the forest for the trees. He takes various historical sources in isolation and tries to explain why each is insufficiently like § 922(n). (Def. Br. 52–61.) But he fails to respond to the government's argument: together these historical sources show a tradition of giving *legislatures* power to impose categorical gun restrictions for public-safety reasons—including power to identify groups posing a sufficient threat to warrant restrictions. (Gov. Br. 41–48.) *See Jackson*, 69 F.4th at 504 ("Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed."); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (noting that *Heller* "tell[s] us … that the legislative role did not end in 1791").

Based on much of the same historical evidence as the government cites here (and that Sanchez tries to discredit), the Eight Circuit recently "conclude[d] that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms." *Jackson*, 69 F.4th at 505. It held that "[w]hether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress

acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons." *Id.* Section 922(n)'s restriction on indicted defendants too "is of a piece with the type of" restrictions legislatures historically employed. *Kelly*, 2022 WL 17336578, at *5 n.7. It simply reflects another, equally permissible judgment about dangerousness or deviation from legal norms.[10]

**3.c.** As the government has explained (Gov. Br. 39–40 n.5; ROA.83–85), historical surety laws "required certain individuals to post bond before carrying weapons in public." *Bruen*, 142 S. Ct. at 2148. Surety laws burdened people's right to bear arms "only if another could make out a specific showing of reasonable cause to an injury or breach of the peace." *Id.* (cleaned up). *See, e.g.*, Mass. Rev. Stat. ch. 134, § 16 (1836); Acts and Laws of His Majesty's Province of New Hampshire in New England 1 (1759); *see also* 4 William Blackstone, Commentaries on the Laws of England 252 (1769); William Rawle, A View of the Constitution of the United States of America 126 (2d ed. 1829). Aware of *Bruen*'s reasons for rejecting surety laws as analogues *to New York's licensing law* (*see* Def. Br. 59), most

---

[10] The government did not "favorably" cite laws disarming minorities (Def. Br. 55) but used them to illustrate historical exercises of legislative power to restrict gun rights—while calling them "repugnant" and "unconstitutional" (Gov. Br. 43 & n.7). Courts have recognized these laws' relevance for that purpose. *See, e.g., United States v. Bartucci*, No. 119CR00244ADABAM, 2023 WL 2189530, at *7 (E.D. Cal. Feb. 23, 2023) (explaining that while such laws are "appalling" and "unconstitutional," "when viewed in combination [they] are telling about what was understood as the scope of the Second Amendment during the period leading up to 1791").

courts to address the issue have recognized their obvious similarities to § 922(n). *See, e.g., Adger*, 2023 WL 3229933, at *1; *Jackson*, 2023 WL 2499856, at *16–17; *Bartucci*, 2023 WL 2189530, at *10; *Simien*, 2023 WL 1980487, at *7; *United States v. Gore*, No. 2:23-CR-04, 2023 WL 2141032, at *4 (S.D. Ohio Feb. 21, 2023); *United States v. Rowson*, No. 22 Cr. 310 (PAE), 2023 WL 431037, at *23–24 (S.D.N.Y. Jan. 26, 2023); *Kays*, 2022 WL 3718519, at *4–5.

*Rahimi*'s discussion of surety laws as possible analogues to § 922(g)(8) does not apply to § 922(n). (Def. Br. 60.) For one thing, *Rahimi* demanded too tight a fit, rejecting the analogy even though it concluded that surety laws were comparably justified and that "[a]spects of how the surety laws worked resemble certain of the mechanics of § 922(g)(8) as well." 61 F.4th at 460. Anyway, § 922(n) does not differ from surety laws in the way *Rahimi* identified for § 922(g)(8). *Rahimi* observed that surety laws "did not prohibit public carry, much less possession of weapons, so long as the offender posted surety." *See id.* Section 922(n) is more like surety laws than is § 922(g)(8) because it too does not prohibit carry or possession (only receipt) and, like surety laws, "embeds its own mechanism for relief: resolution of the pending indictment." *Rowson*, 2023 WL 431037, at *24.

## CONCLUSION

This Court should reject Sanchez's facial challenge to § 922(n), reverse the district court's judgment, and remand this case for trial.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

*/s/ Charles E. Fowler, Jr.*
CHARLES E. FOWLER, JR.
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on July 21, 2023, I filed this brief through this Court's electronic case-filing system, which will serve it on all registered counsel.

*/s/ Charles E. Fowler, Jr.*
CHARLES E. FOWLER, JR.
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

I certify that

1. this brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 6,445 words excluding parts exempted by Rule 32(f); and

2. this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 365 in size 14 Calisto MT font.

Dated: July 21, 2023

*/s/ Charles E. Fowler, Jr.*
CHARLES E. FOWLER, JR.
Assistant United States Attorney